THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUAN GARCIA,

     Plaintiff,

v.

KATIE BICE, CUNNINGHAM, J.
RICHARD, and SGT. GOODCHILD,

     Defendants.

Case No. 3:25-cv-00729-GCS

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Juan Garcia, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Garcia's original Complaint and Amended Complaint (Doc. 1, 23), both alleging that defendants denied him access to ADA accommodations in violation of both the Eighth Amendment and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, were dismissed for failure to state a claim. (Doc. 21, 25). Garcia was granted leave to file an amended pleading (Doc. 25). In his Second Amended Complaint (Doc. 26), Garcia again alleges he was denied access to ADA accommodations.

This case is now before the Court for preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a).

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE SECOND AMENDED COMPLAINT

Garcia alleges he is disabled under the ADA due to multiple strokes that have resulted in paralysis on his left side. (Doc. 26, p. 5). He also suffers from seizures and has a speech impediment. *Id*. at p. 5, 8. He is confined to a wheelchair. *Id*. at p. 5. As of September 2010, Garcia has also been diagnosed with hearing loss. *Id*. While an inmate in the IDOC, Garcia has been housed in an ADA compliant cell with access to an ADA toilet. *Id*. He also has a hearing aid for his hearing loss. *Id*. at p. 8.

At Lawrence, Garcia alleges all inmates are given one hour per shift outside of their cell in a dayroom. (Doc. 26, p. 5). There are no restrooms in the dayroom; inmates have to return to their cells to use the restroom in their cell. Guards can open the doors electronically in the central pod or use their key to open the doors. The majority of guards will open the individual's cell door if they signal the need to use the restroom. *Id*. at p. 5-6. Some inmates do not want to bother the guards and just use the dayroom shower as a toilet. *Id*. at p. 6. Garcia alleges he is not able to use that option due to being confined in a wheelchair. *Id*.

Between March and May 2025, J. Richard ran the dayroom during the morning shift on several occasions. (Doc. 26, p. 6). Every time he ran the dayroom, he would only let individuals out of their cells and then return to the dayroom only at the end of the designated time to lock inmates back up in their cells. He would not let individual

inmates return to their cells to use the restroom. *Id*. All other guards who operated the dayroom, even on different shifts, would allow inmates access to their cells to use the restroom, but Richard refused. *Id*. Garcia tried to return to his cell to use the restroom on several occasions, but Richard refused his requests. Garcia would gesture through the dayroom glass door indicating his need to use the restroom, but Richard would either tell Garcia "No" or gesture in the negative. *Id*. Garcia alleges Richard's actions forced him to choose between using the dayroom or staying in his cell so that he has access to the restroom. *Id*. On several occasions, Garcia has brought a cup or bowl with him to the dayroom so he can urinate into the container and dump it in the shower. *Id*. at p. 6-7.

Garcia also alleges he received several accommodations as a result of his hearing loss, including a hearing aid, headphones, and a vibrating watch. (Doc. 26, p. 8-9). The headphones which he received while previously at Lawrence amplify sound more than the regular headphones sold in the commissary, and the watch allows him to receive alarms as pulses on his wrist. He uses the alerts for his medications. *Id*. at p. 9. Upon returning to Lawrence in 2024, Garcia had all three ADA devices. In February 2025, Garcia was scheduled for a medical appointment outside of the facility. *Id*. But before leaving the prison, he was informed by an officer in the healthcare unit he was not allowed to possess his watch outside of the facility. *Id*. The John Doe officer confiscated his watch but informed him it would be returned upon his return. *Id*. But when Garcia returned from his appointment, staff were unable to locate his watch. *Id*. He submitted a grievance about his missing watch. *Id*.

Garcia also takes issue with the form of cuffing used on him. (Doc. 26, p. 9). Prior to arriving at Lawrence, he was always shackled and then cuffed at his waist due to being in a wheelchair. *Id.* But since arriving at Lawrence, Garcia is cuffed using a "blue box", an additional solid restraint that fully encases the handcuffs at his wrist. *Id.* The special cuffs place his wrists at an awkward position and disable movement in his wrists. *Id.* Garcia notes the device is designed to prevent inmates from picking the lock on the handcuffs. *Id.* Garcia informed transport officers each time that the use of the box was problematic because he is prone to seizures, and doctors informed him the box could cause issues if he had a seizure. *Id.* at p. 10. Garcia also informed Dr. Cole of the issue with the blue box and requested a waiver. Although Dr. Cole indicated she would look into it, she left Lawrence before resolving the issue. *Id.*

Garcia also alleges in May 2025, he was placed in segregation for flooding his cell due to a disagreement over commissary items with Sergeant Navarette. (Doc. 26, p. 10). While in segregation, Katie Bice ordered Garcia to turn in his hearing aid. *Id.* Garcia contends she might have confiscated his hearing aid due to an issue with paperwork and her mistaken belief that he was not authorized for the hearing aid. *Id.* Garcia gave Bice the hearing aid and filed a grievance. *Id.*

Upon returning to general population, Garcia received his property back and discovered several items missing, including his ADA headphones. (Doc. 26, p. 11). Although he initially believed that Bice also confiscated his headphones, he later learned that Lori Cunningham took the headphones. *Id.* Since February 2025, Garcia has lacked access to his watch. *Id.* Without the watch, he often misses the time to take his medications

or forgets to obtain the medications from the nurses when they arrive to distribute medications. *Id*. at p. 11-12. Garcia has been without his hearing aid and headphones since May 2025. *Id*. at p. 12. He has submitted multiple requests to Bice and Cunningham for the return of his headphones and hearing aid, but his requests have been denied. He also learned he was not eligible for another hearing test until February 2026. *Id*.

### PRELIMINARY DISMISSALS

Although Garcia identifies Sergeant Goodchild as a defendant in the case caption, he fails to include any allegations against him in his statement of claim. Thus, any potential claim against Goodchild is **DISMISSED without prejudice**.

Garcia also alleges his equal protection rights were violated by J. Richard because every officer would let inmates back into their cells to use the restroom during dayroom time, but Richard refused to let any inmates back into their cells. His allegations, however, fail to state an equal protection claim under the Fourteenth Amendment. *See, e.g.*, *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (stating that "[t]o establish a *prima facie* case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class.").

Finally, Garcia mentions a John Doe officer who allegedly confiscated and then lost his ADA watch, but he fails to include this individual as a defendant in the case caption. In order to be a party in the case, a plaintiff must identify them in the case caption. *See* FED. R. CIV. PROC. 10(a); *Myles v. United States*, 416 F.3d 551, 551–552 (7th Cir.

2005). Thus, any claim against the John Doe officer who confiscated Garcia's watch is **DISMISSED without prejudice**.

**DISCUSSION**

Based on the allegations in the Second Amended Complaint, the Court designates the following counts:

> **Count 1:**      **Eighth Amendment deliberate indifference claim against J. Richard for denying Garcia access to an ADA-compliant bathroom.**

> **Count 2:**      **Eighth Amendment deliberate indifference claim against Katie Brice and Lori Cunningham for denying Garcia access to his ADA wrist watch, headphones, and hearing aids.**

> **Count 3:**      **ADA claim for the refusal to allow Garcia access to an ADA-compliant bathroom while in the dayroom and for denying him access to his ADA watch, cuffing, headphones, and hearing aids.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Second Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1]      *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

**Count 1**

In order to state a claim for unconstitutional conditions of confinement, a plaintiff must demonstrate "(1) that he suffered a sufficiently serious deprivation, and (2) that [the defendants] acted with deliberate indifference to his conditions of confinement." *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (quotations omitted). Here, Garcia alleges that Richard denied him access to an ADA-compliant bathroom on several occasions despite his knowledge that there were no bathrooms in the dayroom and Garcia was in a wheelchair. At this stage, Garcia states a viable Eighth Amendment claim against Richard.

**Count 2**

To the extent that Garcia alleges he was denied access to his ADA watch, Garcia fails to state a claim against Bice and Cunningham. There are no allegations to suggest that either defendant was personally involved in the confiscation of his watch. *See, e.g., Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (stating that "[t]o recover damages under [Section] 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."). *See also Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (noting that "[l]iability depends on each defendant's knowledge and actions"). Garcia alleges that the watch was confiscated by an unknown officer, who is not identified as a defendant in this case, prior to a medical appointment outside of the prison and lost upon Garcia's return to the prison. (Doc. 26, p. 9). There are no allegations suggesting that either Bice or Cunningham were involved in the confiscation of the watch or were even aware that his watch was missing. Although he

alleges that his watch should be replaced, there is no indication that he has requested a replacement from either defendant. Because Garcia fails to allege that Bice and Cunningham were personally involved in the loss of his watch or have acted with deliberate indifference in failing to replace his watch, Garcia's claims in Count 2 as it relates to his watch are **DISMISSED without prejudice**.

Garcia also fails to state a claim against either Bice or Cunningham in regard to the cuffing procedure Garcia has experienced while at Lawrence. Garcia alleges that he has complained the procedure is dangerous given his propensity to seizures. However, he again fails to allege that either defendant was personally involved in the handcuffing procedure or in deciding whether Garcia was entitled to an exemption.

As to his claim regarding his access to ADA headphones and hearing aids, Garcia alleges that Bice improperly confiscated his hearing aids and Cunningham confiscated his headphones. Garcia alleges he has submitted multiple requests for the return of these items to both Bice and Cunningham, and they have refused those requests. Because of the lack of these devices, he is unable to watch television, listen to music, or contact his family through the phone app on his tablet. (Doc. 26, p. 12). At this early stage, Garcia states a viable claim against Bice and Cunningham in Count 2 for the confiscation of his ADA headphones and hearing aids.

**Count 3**

Garcia also states a viable claim under the ADA for his lack of access to ADA-compliant items and services. *See Lacy v. Cook County, Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). The claim cannot proceed against the individual defendants, however, because

individual employees of IDOC cannot be sued under the ADA. *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b). *See also Jaros*, 684 F.3d at 670, n.2 (noting that individual capacity claims are not available; the proper defendant is the agency or its director (in his or her official capacity)). The Court **ADDS** Director Latoya Hughes, in her official capacity, as the official charged with enforcing the ADA. Thus, Count 3 shall proceed against Latoya Hughes (in her official capacity only).

**DISPOSITION**

For the reasons stated above, Count 1 shall proceed against J. Richard. Count 2 shall proceed against Bice and Cunningham. Count 3 shall proceed against Latoya Hughes (in her official capacity only). All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for J. Richard, Katie Bice, Lori Cunningham, and Latoya Hughes (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Garcia. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Garcia, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Garcia, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Gracia is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  April 14, 2026.**

Digitally signed by
Judge Sison
Date: 2026.04.14
13:53:22 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Second Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**